UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLIFFORD L. JACKSON, JR., <br><br> Petitioner, <br><br> vs. <br><br> NEIL MCDOWELL, Acting Warden, <br><br> Respondent. | Case No: C 13-05407 SBA (PR) <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Following a retrial in the Monterey County Superior Court in 2011, a jury convicted Petitioner Clifford L. Jackson, Jr. ("Petitioner") of two counts of attempted criminal threats. The trial court found true three prior convictions for purposes of California's Three Strikes law and imposed a sentence of 35 years to life. Petitioner brings the instant pro se habeas action under 28 U.S.C. § 2254 to challenge his conviction and sentence. The petition raises the following three claims: (1) the prosecutor's closing argument shifted the burden of proof in violation of Petitioner's constitutional right to due process; (2) Petitioner's trial counsel provided ineffective assistance by not objecting to the argument and by presenting a deficient closing argument; and (3) the enhancement of Petitioner's sentence with his prior convictions under California's Three Strikes law violates his rights under the Eighth Amendment. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the Petition for the reasons set forth below.

# I. BACKGROUND

## A. STATEMENT OF FACTS

The California Court of Appeal summarized the facts of Petitioner's offense as follows[1]:

> Rosemary and William Rogers owned a house in Seaside, California, which they had rented to Judith Moore. In or about July 2004, they caused a notice of eviction to be served upon Moore. Moore agreed to move out and terminate her lease. On July 22, 2004, Rosemary and William [fn.] met Moore and Moore's father at the house in order to inspect the premises and recover the key. The house was empty of most furniture and "piles of things were all over the place." They found defendant, an acquaintance of Moore's, sleeping on the floor in a back bedroom.
>
> Rosemary told defendant he was trespassing and directed him to collect his things and get out. Defendant agreed to leave and began picking up his belongings. After defendant got most of his things outside in the yard, Rosemary heard him mumble that he was a Vietnam veteran and saw him make gestures toward her husband as if to say, "'What are you looking at? What's your problem?' "When it appeared that defendant had all his things outside, Rosemary stood in the doorway. She did not want defendant to come back into the house "because he started getting anxious and seemed to be getting irritated." "[H]e said he would blow our heads off. And [Moore's] father was there, and her kids, and my husband, and myself when that happened. He was a little irate, just seemed off, and at this point my husband called the cops." Rosemary was not sure, but she believed that defendant had mentioned both "blowing our heads off" and "chopping our heads off." She also thought he said something about a rifle. She was afraid "because he kept getting more anxious." He was angry and raising his voice. Rosemary "feared for everybody's safety who was at the house. I didn't know what he was going to do." In fact, Moore's father had encouraged William to call the police, telling him that defendant "was a very dangerous man."
>
> After William called the police, defendant continued "ranting and raving." Rosemary and William, along with Moore and her family, remained in the front room of the house while defendant paced outside. Although she did not try to leave, or lock herself in a room to get away from defendant, Rosemary did take his threats seriously. She was "afraid for [her] life" and stood close to an iron fireplace poker in the hallway behind her. When asked if she believed defendant was "immediately going to kill" her, Rosemary responded, "I didn't think anything one way or the other, other than I didn't know what he was going to do next." She was in immediate fear for her life.
>
> William also recalled Moore's father warning them to be careful because defendant was "violent." Moore's father told them that defendant once "assaulted someone with a knife." William testified that, after his wife told

---
[1] This summary is presumed correct. See Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002).

defendant to leave, defendant became "very agitated, fidgety, kind of going back and forth." After he removed his belongings, he went back in and said, "'No, I'm not leaving.'" It was then he said, "'I'm going to get an AK–47 and blow all your heads off.'" He was angry and shouting and may have also said he was going to cut their heads off. William called the police and defendant went outside and sat down. William remained on the front porch. He saw no weapon but took defendant's statement "as a viable threat" and kept his eyes on him.

Officer Nicholas Borges responded to the scene. He took statements from Rosemary and William and from Judith Moore. Moore's description of defendant's alleged threats was consistent with what Rosemary and William had reported. When Borges arrested defendant, defendant told him that "[Borges had] fucked up, and that they were going to cut [Borges's] head off."

Judith Moore and her father both testified that they did not hear defendant make any threats. Defendant was "belligerent and rude," according to Judith Moore. And he was not happy about having to leave, according to Moore's father. But "he wasn't raving and going on." Moore's father denied having told William that defendant might be dangerous.

People v. Jackson, 178 Cal. App. 4th 590, 593-95 (2009) ("Jackson I").

### B. PROCEDURAL HISTORY

#### 1. Conviction and Sentence

Petitioner was initially charged in an amended information with two counts of making criminal threats in violation of California Penal Code § 422. Id. The amended information further alleged that Petitioner had suffered three prior strike convictions (California Penal Code § 1170.12(c)(1)) and two prior serious felonies (id. § 667(a)(1)), and that he had committed a felony while out on bail (id. § 12022.1). Jackson I, 178 Cal. App. 4th at 595.

After the first trial, the jury acquitted Petitioner of making criminal threats against Rosemary and William Rogers, but convicted him of the lesser included offense of attempted criminal threat (California Penal Code §§ 422, 664). Id. Petitioner admitted the remaining allegations. Id. He was sentenced to twenty-five years to life in prison. Id. Petitioner appealed the judgment to the California Court of Appeal.

In 2009, the California Court of Appeal reversed Petitioner's judgment. The state appellate court explained that the crime of attempted criminal threat includes a "reasonableness element," and that the trial court erroneously failed to instruct the jury to

consider whether the intended threat reasonably could have caused sustained fear under the circumstances. Id. at 596-601. Specifically, the court held as follows:

> [I]n order to support a conviction for attempted criminal threat the jury must find that the defendant specifically intended to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.

Id. at 598.

On remand, the prosecution filed an amended information. CT 1-5. The amended information charged two counts of attempted criminal threats, three prior strikes (California Penal Code § 1170.12) and two prior serious felony convictions (id. § 667(a)).[2] The amended information also included a misdemeanor resisting charge and on-bail enhancement allegations that were later dismissed. CT 1-5.

At Petitioner's retrial, Rosemary and William Rogers, as well as the arresting officer, Officer Nicholas Borges, again testified. In addition, the redacted testimony of Moore and her father (John Moore) from the previous trial was read into the record. CT 115-116.

On September 16, 2011, the jury convicted Petitioner as charged on each count of attempted criminal threat. CT 120-121; 5-A RT 1287-1288. In a bifurcated trial, the court found the prior conviction allegations true. CT 122; 4 RT 1507-1508; see also 8 RT 2114-2116.

On December 16, 2011, the court sentenced Petitioner to two concurrent terms of thirty-five years to life in prison. 1CT 164, 223; 8 RT 2119. The sentence was imposed consecutively to a previously-imposed 2006 conviction and sentence of twenty-five years to life in Monterey County Superior Court No. SS041968A. 8 RT 2120.

---

[2] Petitioner had admitted these allegations at the first trial. See Jackson I, 178 Cal. App. 4th at 595. CT 1-5.

## 2. Post-Conviction Appeals and Collateral Attacks

Petitioner appealed the judgment to the California Court of Appeal, alleging a claim for ineffective assistance of counsel ("IAC"). In particular, Petitioner asserted that, during rebuttal argument, the prosecutor attempted to shift the burden of proof to the defense, and that his trial counsel was ineffective for failing to object to the prosecutor's remarks. People v. Jackson, No. H036769, 2012 WL 4354933, *1 (Cal. Ct. App. Sept. 25, 2012) ("Jackson II").

On September 25, 2012, the California Court of Appeal affirmed the judgment, and rejected Petitioner's IAC claim. Id. at *4. The state appellate court denied rehearing. Resp't Ex. 7. The California Supreme Court denied review. Resp't Ex. 8.

In 2013, Petitioner filed a state habeas petition restating under federal and state law his IAC claim that had been rejected on direct review, and the California Supreme Court summarily denied the petition. Resp't Ex. 9.

On November 20, 2014, Petitioner filed the instant federal petition. On January 30, 2015, the Court denied Respondent's motion to dismiss and ordered proceedings stayed while Petitioner exhausted his newly-asserted sentencing claim (Claim Three). Dkt. 27.

Petitioner filed a state habeas petition in the California Supreme Court raising his sentencing claim. Resp't Ex. 10. On May 20, 2015, the California Supreme Court summarily denied the petition. Id.

On August 6, 2015, this Court lifted the stay in the instant proceeding and issued an Order to Show Cause. Dkt. 32.

Respondent has filed an Answer, and Petitioner has filed a Traverse. Dkts. 34, 37. The matter is now fully briefed.

## II. STANDARD OF REVIEW

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless: (1) the proceeding "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The first prong of § 2254 applies both to questions of law and to mixed questions of law and fact. See Williams (Terry) v. Taylor, 529 U.S. 362, 407-409 (2000). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue." Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 76-77 (2006)).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams (Terry), 529 U.S. at 411. Rather, the petitioner must show that the application of Supreme Court law was "objectively unreasonable." Id. at 409; Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

The second prong of § 2254 applies to decisions based on factual determinations. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

6

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

As explained below, Petitioner did not contemporaneously object to the prosecutor's alleged burden-shifting argument in Claim One; therefore, he has procedurally defaulted on this claim from a federal habeas corpus review. However, even though Petitioner forfeited his due process claim, the state appellate court addressed the issue in the context of his Sixth Amendment IAC claim premised on his trial counsel's failure to object to the prosecutor's rebuttal. See Jackson II, 2012 WL 4354933, at *3-*4. Meanwhile, the last reasoned decision as to Petitioner's IAC claim (Claim Two) is the California Court of Appeal's unpublished disposition issued on September 25, 2012. See id. Finally, there is no reasoned decision on his sentencing claim (Claim Three), which was summarily denied by the California Supreme Court on May 20, 2015. Resp't Ex. 10.

### III. DISCUSSION

#### A. CLAIMS BASED ON IMPROPER REBUTTAL ARGUMENT

Petitioner's first and second claims are predicated upon brief remarks made by the prosecutor during rebuttal argument. In Claim One, Petitioner contends that his due process rights were violated because the prosecutor's argument attempted to shift the

7

burden of proof to the defense. In Claim Two, Petitioner argues that his trial counsel was ineffective for failing to object to the prosecutor's remarks. The facts pertinent to these claims are summarized in Jackson II as follows:

> In People v. Jackson (2009) 178 Cal.App.4th 590, we reversed defendant's convictions of two counts of attempted criminal threat because we concluded that attempted criminal threat includes a reasonableness element and the jury at defendant's trial was not instructed to consider whether the intended threat reasonably could have caused sustained fear under the circumstances. We held: "[I]n order to support a conviction for attempted criminal threat the jury must find that the defendant specifically intended to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety." (Id. at p. 598.)
>
> At defendant's retrial, the trial court instructed the jury consistent with our opinion as follows: "The defendant is charged in Counts One and Two with attempted threats of violence. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant took a direct but ineffective step towards committing threats of violence. Two, the defendant specifically intended to threaten a crime resulting in death or great bodily injury. Three, with a further intent that the threat be taken as a threat; four, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution; and, five, so as to cause a reasonable person to be in sustained fear for his or her safety, or for his or her family safety."
>
> Thereafter, the People argued the following points to the jury.
>
> "Now, when we're talking about an attempt to threaten someone, the Judge read the law to you, and I want to go over it in a little more detail because it has a lot of language in it. Basically what it says is when someone attempts to threaten—attempts to threaten someone with violence, we have to prove the defendant took a direct but ineffectual step towards committing threats of violence."
>
> "And finally, could that kind of threat have caused a reasonable person to be in sustained fear for himself or his wife, and under these circumstances, her husband."
>
> Defendant then offered the following in his argument.
>
> "So we look at the instruction, and we see that the People have t[he] burden of proof. They have the burden of proof to prove a defendant guilty beyond a reasonable doubt. They have the burden to prove every element. [¶] Now, you know, it's easy to say, well, you know, we—there's five or six things and there's no question that these three or four things are proven, and that's it, and your job is done, and let's go home. No. You have to look at all of the parts of the instructions, all of the elements, and so on."
> *2 "So going again through the applicable law. We have talked about

8

| | |
|---|---|
| 1 | whether it's proven beyond a reasonable doubt, lapse of time is not an excuse for the People not to meet that burden, witnesses." |
| 2 | In rebuttal, the People urged the following. |

"Now, if these witnesses came in here seven years later and had perfect recall of what happened and remembered every detail exactly right, it would mean that they were lying, because no one can remember anything from seven years ago, every detail. Defense attorney says that just because it's been seven years, does not reduce the burden of proof, and it doesn't. You don't believe beyond a reasonable doubt that those defendants said those words, then you must acquit him."

"But the bottom line here is there is no element that Mr. and Mrs. Rogers were in fear. That is not an element of this crime. We always go back to the elements of the crime, because we try to break the crime down into simple pieces so the jury can follow it. Not everyone is very well versed in the law to follow it as easily as we can, so the Judge—a very good Judge—reads the instructions to you: one, two, three, four, five. Do you find all five of those true? And then it is a crime that was committed. And if you find them beyond a reasonable doubt, then he's guilty. And what the elements are is that a reasonable person under those circumstances could be in sustained fear of that threat. So basically what you're saying is if that element is not met, that what you're saying is ***it would be unreasonable for someone to be in sustained fear*** when being told they're going to be killed. If someone comes into my office and tells me 'I'm going to go get my AK-47 and come back here and kill you,' ***would it be unreasonable of me to be in fear, in sustained fear***, and to be in real fear, no a momentary or fleeting fear? That's what the language is. Sustained fear means a period of time that is more than momentary fleeting or transitory. I would argue to you that the Rogers are probably still in fear today of that happening. But that's not an element of the crime. We are not talking about that. We are talking about what a reasonable person—any reasonable person having this man under those circumstances say what he say would they feel fear. I don't believe there is a reasonable doubt as to that." (Italics added.)

Jackson II, 2012 WL 4354933*1-*2. Petitioner contends that the italicized statements in the above-quoted passage improperly shifted the burden of proof to the defense, and that his trial counsel should have objected to them.

### 1. Due Process Claim

Petitioner first contends that the prosecutor impermissibly shifted the burden of proof to the defense in violation of his Fourteenth Amendment right to due process. Dkt. 1 at 6. However, Petitioner failed to object to the remarks when they were made, and admitted as much on appeal. Jackson II, 2012 WL 4354933 at *3. As a result, the state appellate court deemed the claim waived based on California's rule requiring a contemporaneous objection to preserve a claim of improper argument by the prosecutor.

9

Id. ("When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection" in order to preserve the claim on appeal") (citing People v. Morales, 25 Cal. 4th 34, 43-44 (2001)).[3]

The failure to comply with a state's contemporaneous objection rule results in a procedural default which bars federal consideration of the issue, unless the petitioner can show "cause" for the failure to comply with the state procedural rule and "prejudice" arising from the default, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).[4] To establish a "fundamental miscarriage of justice," a petitioner must demonstrate "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Wood v. Ryan, 693 F.3d 1104, 1117-18 (9th Cir. 2012) (internal quotation omitted). A claim of actual innocence is rarely met and must be based on reliable evidence not presented at trial. Casey v. Moore, 386 F.3d 896, 921 n.27 (9th Cir. 2004).

In the instant proceeding, Petitioner does not make any showing of cause and prejudice, and none is otherwise apparent from the record. Nor has Petitioner made any showing of actual innocence in order to demonstrate a fundamental miscarriage of justice. Having failed to demonstrate cause and prejudice or a fundamental miscarriage of justice, the Court finds that Petitioner's due process claim is procedurally barred. Fairbank v. Ayers, 650 F.3d 1243, 1256 (9th Cir. 2011) (California's contemporaneous objection rule deemed to be an adequate and independent state ground for dismissal of a federal habeas claim); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (instructional error claim

---

[3] Because the due process claim was waived, the state appellate court instead construed Petitioner's challenge as one for IAC. The Court addresses Petitioner's related IAC claim below.

[4] If insufficient cause is shown, a court need not reach the prejudice question. Smith v. Baldwin, 510 F.3d 1127, 1147 (9th Cir. 2007).

procedurally defaulted where state court ruled the claim was waived by failure to object to instruction at trial).

Relief on Petitioner's due process claim is DENIED.

### 2. IAC Claim

Petitioner next contends that his trial counsel was ineffective for: (1) failing to object to the prosecutor's alleged burden-shifting argument; and (2) presenting a deficient argument regarding whether Petitioner's actions caused a reasonable person to be in sustained fear. Dkt. 1 at 6.

#### a) *Applicable Law*

The clearly established federal law governing IAC claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that (1) performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted). Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Where deficient performance is established, "[the] errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 562 U.S. at 101 (quoting Strickland, 466 U.S. at 687). The Strickland standard applies to trial and appellate counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

Under AEDPA, a federal court's review of a state court's decision on an IAC claim is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011). In other words, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from

**1** asking whether defense counsel's performance fell below Strickland's standard." Griffin v.
**2** Harrington, 727 F.3d 940, 945 (9th Cir. 2013)) (quoting Richter, 562 U.S. at 101).

### b) *Failure to Object*

The state appellate court reviewed Petitioner's IAC claim based on the two-part test articulated in Strickland. Jackson II, 2012 WL 4354933 at *3 (citing People v. Benavides, 35 Cal. 4th 69, 92-93 (2005) (following Strickland)). Upon reviewing the record and the challenged statements in context, the state appellate court concluded that the prosecutor did not shift the burden to Petitioner, defense counsel's failure to object was not deficient, and that there was no reasonable likelihood that the jury construed or applied the remarks in an unconstitutional manner.

The state appellate court first set forth the applicable standard for evaluating claims of misconduct by the prosecution, explaining that "[w]hen the claim of misconduct is based on arguments or comments the prosecutor made before a jury," the salient question is "whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." Id. If not, "the challenged statement or argument [is] not misconduct," and, by extension, "it would not be outside the range of competence for counsel to fail to object." Id. Even if the prosecutor engaged in misconduct, defense counsel's failure to object does not establish incompetence. Id. Rather, the defendant "must show that counsel's omission involved a critical issue, and that the failure to object could not be explained as a reasonable trial tactic." Id.

The state appellate court found that "the objected-to snippets" of the prosecutor's rebuttal argument "did not insist that an acquittal required the jury to find that it would be unreasonable for someone to have sustained fear." Id. at *4. Rather, such remarks "can be interpreted as urging that an acquittal would equate to a conclusion that, under the circumstances, it would be unreasonable for a person to be in sustained fear after being told he or she was going to be killed." Id. Importantly, the court emphasized that immediately preceding the disputed remarks, the prosecutor reminded the jury that the elements of the offense are "that a reasonable person under those circumstances could be in sustained fear

1  of that threat," and that the prosecution bore the burden of proving each element of the
2  offense beyond a reasonable doubt. Id. In addition, the remarks also followed the trial
3  court's instruction to the jury that "it must find beyond a reasonable doubt that the
4  reasonableness element of attempted criminal threat requires that the intended threat must
5  reasonably cause sustained fear." Id. Thus, upon reviewing the record and the challenged
6  statements in context, the state appellate court held that the prosecution did not misstate the
7  reasonableness element or attempt to shift the burden of proof to the defense. Id.

   The state appellate court also found no merit to Petitioner's claim that his trial
9  counsel was ineffective by virtue of failing to object to the prosecution's remarks. The
10 court explained that trial counsel may have refrained from objecting because he had
11 concluded that there was "no reasonable likelihood that the jury would construe or apply
12 the remarks to absolve the People of proving the reasonableness element"; or alternatively,
13 he did not feel that the remarks were sufficiently prejudicial to warrant an objection. Id.
14 The court concluded that, "[i]ndeed, the circumstances convince us that trial counsel's
15 failure to object was because the supposed misconduct and any potential prejudice are more
16 apparent than real, more arguable on appeal than actual at trial." Id.

17 Based on the record presented, the Court finds that the state appellate court's
18 rejection of Petitioner's IAC claim does not constitute an unreasonable application of
19 Strickland. See Richter, 562 U.S. at 101. Both the trial court and prosecutor correctly
20 explained the reasonableness element of attempted criminal threat, including that the
21 intended threat must reasonably cause sustained fear. Jackson II, 2012 WL 4354933 at *3.
22 The jury also was instructed that such element had to be proven beyond a reasonable doubt.
23 Id. Against that backdrop, it is clear that the prosecutor did nothing improper. Rather, his
24 remarks, while perhaps not a model of clarity, reflect nothing more than his attempt to
25 illustrate that a reasonable person would be in sustained fear if they were told that they
26 were going to be shot and killed. Because the prosecution's remarks were not improper,
27 there was no reason for Petitioner's trial counsel to interpose an objection. As such, trial
28 counsel's failure to object is insufficient to sustain an IAC claim. See Morrison v. Estelle,

13

**1** 981 F.2d 425, 429 (9th Cir.1992) (the failure to make a futile objection does not constitute
**2** ineffective assistance of counsel). Even if counsel's performance were deficient, Petitioner
**3** has made no showing that, but for counsel's alleged error in failing to object, there is a
**4** reasonable probability that the result of his trial would have been different.

**5** Relief on Petitioner's IAC claim based on trial counsel's failure to object is
**6** DENIED.

### c) *Deficient Argument*

Petitioner next claims that his trial counsel failed to comprehend the elements of the charged offense and consequently failed to make any argument regarding whether the prosecution had affirmatively established that "a reasonable person [was] . . . in sustained fear." Dkt. 1 at 8. The state appellate court rejected this claim for failure to demonstrate prejudice. The court stated: "Even accepting defendant's premise that trial counsel was deficient for failing to argue the reasonableness element, defendant offers no discussion to the effect that, had counsel made the reasonableness argument, the result of the proceeding would have been different. His contention therefore fails." Jackson II, 2012 WL 4354933, *4.

The Court finds that the record does not support Petitioner's contention that his trial counsel failed to comprehend the elements of the offense of attempted criminal threats. Despite Petitioner's assertions to the contrary, defense counsel, in fact, expressly argued that the prosecution failed to prove that the victims had experienced sustained fear. See e.g., 5 RT 1273 ("They could have done a lot of things that . . . would show you and demonstrate to you that they were in sustained fear. They did nothing."). Petitioner attempts to make much of counsel's brief misstatement that the prosecution had to show that Petitioner's conduct "[caused] *someone* to be in sustained fear," as opposed to the actual language of the jury instruction that the conduct "caused a reasonable person to be in sustained fear." Dkt. 1 at 8 (emphasis added).[5] Yet, almost immediately before making his

---

[5] In response, the prosecutor objected, and the trial court reread the portion of the instruction stating that element as "caused a reasonable person to be in sustained fear." 5 RT 1269-1279.

14

erroneous reference to "someone," defense counsel accurately recited that the standard was whether the threat caused "a reasonable person to be in sustained fear for his own safety . . . ." 5 RT at 1269 (emphasis added). Thus, counsel's one-time misstatement – which was immediately cured by the trial court which re-read a portion of the pertinent jury instruction – does not suggest, let alone establish, a lack of understanding regarding the elements of the charge. In any event, even if defense counsel could have presented a more compelling closing argument, Petitioner has made no showing that the outcome at trial would have been any different.

Relief on Petitioner's IAC claim based on trial counsel's deficient argument is DENIED.

### B. SENTENCING CLAIM

#### 1. Double Jeopardy

Petitioner contends the enhancement of his sentence based on his prior convictions pursuant to California's Three Strikes law effectively violates the Fifth Amendment's Double Jeopardy Clause. Dkt. 1 at 6, 9. However, the Supreme Court and the Ninth Circuit Court of Appeals have rejected such a claim. Witte v. United States, 515 U.S. 389, 400 (1995); see also Spencer v. Texas, 385 U.S. 554, 559-60 (1967) (upholding use of prior convictions to enhance sentences for subsequent convictions even if in a sense defendant must relitigate in sentencing proceeding conduct for which he was already tried). Accordingly, the Court finds no merit to this claim. See Jackson v. Nelson, 435 F.2d 553, 553 (9th Cir. 1971) (dismissing contentions of equal protection, bill of attainder, double jeopardy and ex post facto against recidivist statute as meritless); see also Monge v. California, 524 U.S. 721, 734 (1998) (no violation of the Double Jeopardy Clause by retrial on prior convictions).

Relief on Petitioner's double jeopardy claim based on trial counsel's deficient argument is DENIED.

#### 2. Cruel and Unusual Punishment

Petitioner contends that his sentence of twenty-five years to life imprisonment,

which was rendered pursuant to California's Three Strikes law, constitutes cruel and unusual punishment in violation of the Eighth Amendment because the sentence is "grossly out of proportion to the severity of the crime." Dkt. 1 at 6, 9. The Eighth Amendment forbids "extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 (2003). A sentence will be found grossly disproportionate only in "exceedingly rare" and "extreme" cases. Andrade, 538 U.S. at 73. In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, such as California's Three Strikes law, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004). Successful challenges based on proportionality are "exceedingly rare." Taylor v. Lewis, 460 F.3d 1093, 1098 (9th Cir. 2006)

In Ramirez, the Ninth Circuit held that a sentence of twenty-five years to life upon conviction of petty theft with prior convictions was grossly disproportionate to the current crime where the previous two strikes did not involve violence and where both strikes were the result of one negotiated plea resulting in a one-year county jail sentence. 365 F.3d at 767-70. The court noted that this was the "extremely rare case that gives rise to an inference of gross disproportionality." Id. at 770. In a subsequent case, however, the Ninth Circuit held that a sentence of twenty-five years to life upon conviction of petty theft with prior convictions was not grossly disproportionate. Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004). Distinguishing Ramirez, the Rios court focused on the fact that that the defendant had struggled with a guard to prevent being apprehended, his prior convictions of robbery "involved the threat of violence … because his cohort used a knife," and because the defendant had a lengthy criminal history. Id.

In the instant case, Petitioner was sentenced to two concurrent terms of thirty-five years to life pursuant to California's Three Strikes law, which is triggered when a defendant (1) is convicted of a felony and (2) has suffered one or more prior "serious" or "violent" felony convictions. See Cal. Penal Code § 667(e)(2)(A). Under California's Three Strikes

law at the time of Petitioner's sentencing, any felony conviction could constitute the third strike and subject a defendant to a term of twenty-five years to life in prison. See Andrade, 538 U.S. at 67.

Petitioner's criminal history includes two forcible rapes against two different victims, during which he dragged the victims by their head or neck, slapped them repeatedly, and threatened to kill them. CT 149. He was sentence to four years in prison and was paroled in 1981. CT 149. Less than four months after being paroled, Petitioner committed a third forcible rape and was sentenced to six years in prison. CT 149. Eight months after his release in 1986, Petitioner committed a battery on a police officer. CT 149. He was paroled on that charge in 1988, and subsequently was convicted for injuring a police officer. CT 149. Petitioner was release from prison in late 2003, and committed the instant offenses in 2004. CT 150. These felonies, as well as Petitioner's other crimes, were set forth in the prosecutor's sentencing memorandum and discussed at a Romero hearing. CT 149-150; 8 RT 2105-2117.

To the extent Petitioner asserts a disproportionality claim with respect to his total sentence of thirty-five years to life, it is controlled by Andrade. In that case, the Supreme Court held that the petitioner's Three Strikes sentence of fifty years to life (two consecutive Three Strikes sentences) following conviction for two felony counts of petty theft with a prior was not disproportionate to the offense or cruel and unusual punishment in violation of the Eighth Amendment. See 538 U.S. at 76. Here, Petitioner has a lengthy, prior criminal history based on violent rapes and assaults. He committed many of those offenses within a short period of time following his release on parole. The offenses at issue likewise occurred shortly after his most recent release from prison, and are consistent with his pattern of violent conduct. Given those circumstances, Petitioner's sentence, while perhaps harsh, fails to raise "an inference of gross disproportionality." See Graham v. Florida, 560 U.S. 48, 60 (2010). Consequently, consideration of comparative factors is unnecessary, see id., and the Eighth Amendment claim fails.

The state supreme court's summary rejection of Petitioner's Eighth Amendment

17

claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Based on Petitioner's history of criminal recidivism, which includes multiple crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth Amendment. See Rios, 390 F.3d at 1086; see also Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of twenty-five years to life for recidivist convicted of two counts of petty theft with a prior theft conviction and who had four prior strike convictions for burglary); Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) (sentence of ineligibility for parole for forty years not grossly disproportionate when compared with gravity of sexual molestation offenses).

Relief on Petitioner's cruel and unusual punishment claim is DENIED.

## IV. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons discussed above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

## V. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. All claims from the Petition are DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk shall terminate any pending matters and close the file.

IT IS SO ORDERED.

Dated: August 21, 2017

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

P:\PRO-SE\SBA\HC.13\Jackson5407.denyHC-rev3.docx